# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

**FILED**

AUG 15 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

LARRY GOLDEN

*Pro Se* Plaintiff,

V.

QUALCOMM INC.

Defendant.

CASE NO: 4:22-cv-03283-HSG

**(JURY TRIAL DEMANDED)**

**(Sherman Act) (Motive to Form a Conspiracy) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**

August 13, 2022

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGEMENT

The Defendant is seeking a final judgement on its motion to dismiss. "It should be clear by now that Plaintiff will continue this unwarranted conduct against Qualcomm unless his meritless Complaint is dismissed with prejudice." *Golden v. Qualcomm:* Case 4:22-cv-03283-HSG Document 25 Filed 08/08/22 Page 18 of 19

## DISMISSED "WITHOUT PREJUDICE" – PLAINTIFF IS ALLOWED TO RE-FILE CHARGES, ALTER THE CLAIM, OR BRING THE CASE TO ANOTHER COURT

Dismissal "Without Prejudice": "When a court dismisses a claim but leaves the plaintiff free to bring a subsequent suit based on the same grounds as the dismissed claim. *In Semtek Intern. Inc. v. Lockheed Martin Corp.*, the Supreme Court pointed out that one of the main features of dismissal without prejudice is that it does not prevent refiling of the claim… "a case that is dismissed "without prejudice" is only dismissed temporarily. This temporary dismissal means that the plaintiff is allowed to re-file charges, alter the claim, or bring the case to another court."

The pleadings [Complaint] in this case, *Golden v. Qualcomm:* Case 4:22-cv-03283-HSG Document 1 Filed 06/06/22 Pages 4 & 5 of 37; Plaintiff included the following:

**Related Case Dismissed "Without Prejudice"—Antitrust Law Violations**

15.     UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT No. 21-2160 *Larry Golden*, [] Plaintiff-Appellant, *v. ... Qualcomm Inc ...*, Defendant[s]–Appellee[s]. USCA4 Appeal: 21-2160 Doc: 7 Filed: 03/31/2022

16.     "PER CURIAM: Larry Golden appeals the district court's order accepting the recommendation of the magistrate judge and <u>dismissing without prejudice</u> Golden's civil complaint. We have reviewed the record and find no reversible error. Accordingly, we affirm the district court's order." *Golden v. Apple, Inc.*, No. 6:20-cv-02270-JD (D.S.C. Sept. 20, 2021) ...

**Related Case Dismissed "Without Prejudice"—Patent Infringement**

17.     IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA GREENVILLE DIVISION *Larry Golden*, Plaintiff, vs. … *Qualcomm Inc …*, Defendant[s]. Case No.: 6:20-cv-04353-JD-KFM Date Filed 11/02/21 Entry No. 26.

18.     "Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation as modified and incorporates it herein. IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is <u>dismissed without prejudice</u> and without the issuance of service of process."

2

**Dismissal "Without Prejudice":**

19.     When a court dismisses a claim but leaves the plaintiff free to bring a subsequent suit based on the same grounds as the dismissed claim. *In Semtek Intern. Inc. v. Lockheed Martin Corp.*, the Supreme Court pointed out that one of the main features of dismissal without prejudice is that it does not prevent refiling of the claim… "a case that is dismissed "without prejudice" is only dismissed temporarily. This temporary dismissal means that the plaintiff is allowed to re-file charges, alter the claim, or bring the case to another court."

Plaintiff is re-filing this case of antitrust law violations against Qualcomm that include receiving royalties without a patent, a license, or authorization to do so; "tying" CPUs that allegedly infringes Plaintiff patent claims for CPUs to Qualcomm's chipsets and force selling the chipsets under Qualcomm's policy of "no license, no chip"; and, unjust enrichment.

Plaintiff is also re-filing this case because in a related case, *Larry Golden* v. *The United States* Case 1:13-cv-00307-EGB Document 176 Filed 05/30/19, Qualcomm fail to appear to protect its interest: "Certificate of Service on Qualcomm: Pursuant to Rule 14(b) and the Court's April 16, 2019 order (Dkt. 166), the United States ("the Government") files with the Clerk its return of service on Qualcomm Inc., indicating completion of the required of the Clerk's RCFC 14 Notice (see Dkt. 169) …"

When Qualcomm fail to appear in response to a notice under Rule 14(b), the Government decided not to present a defense on Qualcomm's behalf. Qualcomm never defend the alleged contributory patent infringement claims brought against Qualcomm. Also, Qualcomm's failure to appear, means Qualcomm "waived its right to present later argument in another Court", or "to offer evidence and advance legal arguments appropriate to protect its own interests".

Because patent infringement is a federal cause of action, federal courts have the jurisdiction to hear patent disputes [28 U.S. Code § 1338]. When a patent owner files a complaint for patent infringement in a federal district court under 35 U.S.C. 271 (a) – (c), subject matter jurisdiction automatically arises when pled.

Patent cases, are governed by their own venue rule:  28 U.S.C. § 1400(b). The Supreme Court, in *TC Heartland*, held that an accused infringer [Qualcomm] can be sued only in its state of incorporation, or where the Defendant has committed acts of infringement and has a regular and established place of business, *See TC Heartland LLC v. Kraft Foods Group Brands LLC*,

137 S.Ct. 1514 (2017). After *TC Heartland*, Qualcomm is no longer subject to suit in forums where they lack a regular and established "place of business."

## AFTER SIX YEARS THE DEPARTMENT OF JUSTICE (DOJ) DISCONTINUED DEFENDING QUALCOMM BECAUSE THE PRIME CONTRACTOR QUALCOMM FAIL TO APPEAR

Qualcomm was awarded a contract "BAA07-10," entitled "CELL-ALL Ubiquitous Biological and Chemical Sensing," in 2007. An "initiative to equip cell phones with hazardous-materials sensors in order to mitigate the risk of terrorist attacks".

"In 2007, S&T called upon the private sector to develop concepts of operations. To this end, three teams from *Qualcomm*, the National Aeronautics and Space Administration (NASA), and Rhevision Technology are perfecting their specific area of expertise. *Qualcomm* engineers specialize in miniaturization and know how to shepherd a product to market. Similarly, S&T is pursuing what's known as cooperative research and development agreements with four cell phone manufacturers: *Qualcomm*, LG, Apple, and Samsung. These written agreements, which bring together a private company and a government agency for a specific project, often accelerate the commercialization of technology developed for government purposes." *Cell-All: Super Smartphones Sniff Out Suspicious Substances*. Retrieved from: https://www.dhs.gov/ science-and-technology/cell-all-super-smartphones-sniff-out-suspicious-substances

"[T]he third-party contractors that received the Government's authorization of or consent to private parties' infringement," *Sheridan v. United States*, 120 Fed. CL at 131, are Rhevision, Seacoast Science, NASA, Synkera, *Qualcomm*, Apple, Samsung, and LG. Qualcomm was given "authorization and consent" by the Government to development and assemble what Plaintiff has alleged is his patented communicating, monitoring, detecting and controlling (CMDC) device i.e., a new, useful, and improved cell phone—smartphone.

Plaintiff filed a cause of action, *Larry Golden v. The United States* Case 1:13-cv-00307-EGB, of alleged patent infringement against Rhevision, Seacoast Science, NASA, Synkera, *Qualcomm*, Apple, Samsung, and LG on May 1, 2013 in the U.S. Court of Federal Claims:

> *28 U.S.C. § 1498(a)* provides a remedy against the Federal Government for the
> unlicensed "use or manufacture of an invention described in and covered by a patent of

the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government."

Plaintiff more specifically brought an action against the third-party government prime contractor of the *Cell-All* initiative, Qualcomm, for "tying" Plaintiff's patented CPUs to its wireless cellular modems to form its Snapdragon Series of Chipsets [2007]. A "tying," "tie-in," or "tied sale" arrangement has been defined as "an agreement by a party to sell one product . . . on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that [tied] product from any other supplier." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462 (1992), See also, *Federal Trade Commission v. Qualcomm Incorporated,* Case 5:17-cv-00220-LHK "Qualcomm's anticompetitive conduct is conduct that 'harms the competitive process and thereby harms consumers.'" 6ER1208 (quoting *Microsoft*, 253 F.3d at 58) … "[A]pplying that standard, the district court agreed with the FTC that Qualcomm's practices were anticompetitive."

In the United States Court of Federal Claims No. 13-307C (Filed: February 26, 2021) *LARRY GOLDEN*, Plaintiff, v. *THE UNITED STATES*, Defendant.

"On October 21, 2013, the court granted defendant's motion for a more definite statement and directed plaintiff to file such, which he did a month later. Plaintiff's more definite statement became his operative, second amended complaint. It continued to assert infringement of the 990 patent by DHS and NASA and a host of third-party electronics manufacturers, such as LG, Apple, and **Qualcomm**, whom he alleged had "cooperative agreements" with DHS. Second Am. Compl. ¶ 30."

"Golden alleged infringement of the same '990 patent and elaborated his allegation that DHS indirectly infringed "the claims of Golden's [US RE43,990] patent" under 35 U.S.C. § 271(b) (2000), through solicitation number "BAA07-10," entitled "CELL-ALL Ubiquitous Biological and Chemical Sensing," which was released on October 2007. Third Am. Compl. ¶¶ 28 (ECF No. 29). Plaintiff claimed infringement by third parties: "Seacoast Science Inc., Center for Nanotechnology at NASA's Ames Research Center, and Rhevision Technology Inc., Samsung Electronics Co. Ltd, LG Electronics Inc., Apple Computer Inc., and **Qualcomm Inc.**," but asserted that all the third parties had entered into cooperative agreements from the Department of Homeland

Security for providing hardware, providing software, and providing wireless service. Id. ¶ 30."

In the United States Court of Federal Claims No. 13-307C (Filed: November 10, 2021; Dkt. 249) *LARRY GOLDEN*, Plaintiff, v. *THE UNITED STATES*, Defendant.

"He then quotes from the specifications of all five patents regarding the use of the CPU in his invention. Although not explicitly argued, we understand this to be an argument that the ability of the CPU in the accused devices to instruct the phones to perform functions, such as running a sensor, is sufficient to infringe on his device, given the central importance of the CPU to both his CMDC and the accused phones by LG, Apple, and Samsung. He also discusses documents from *Qualcomm*, a mobile phone chip producer, apparently submitted to DHS in response to the Cell-All solicitation. Lastly, plaintiff reiterates that Claim 1 of the '497 patent is infringed by the accused products' CPUs, chipsets, and biometric locking disablers (fingerprint reading)"

## The Department of Justice (DOJ) Quit on Defending Qualcomm because of Qualcomm's Failure to Appear.

In the United States Court of Federal Claims No. 13-307C (Filed: May 30, 2019; Dkt. 176), *LARRY GOLDEN*, Plaintiff, v. *THE UNITED STATES*, Defendant.

"Certificate of Service on *Qualcomm*: Pursuant to Rule 14(b) and the Court's April 16, 2019 order (Dkt. 166), the United States ("the Government") files with the Clerk its return of service on Qualcomm Inc., indicating completion of the required of the Clerk's RCFC 14 Notice (see Dkt. 169) ..."

> "While a contractor need not participate in the § 1498 litigation, contractors should be aware that failure to appear in response to a notice under Rule 14(b) acts as a waiver of any later argument that the contractor should not indemnify the government on grounds that the USCFC incorrectly decided the patent was valid and infringed." *Intellectual Property Suits in the United States Court of Federal Claims*. Retrieved from: https://www.uscfc.uscourts.gov/node/2927

> As the USCFC held in *Bowser, Inc. v. United States*: "We think there is implicit in the whole plan and purpose of Subsection 14(b) a congressional intent that the issues of fact and law decided in a suit against the United States in the Court of Claims may not be retried in another court at the insistence of a third party, who had a "possible" interest in the case in this court but who failed to appear and

protect his interest after timely notice or summons had been served upon him."
420 F.2d 1057, 1060 (Ct. Cl. 1970)

When Qualcomm fail to appear in response to a notice under Rule 14(b), the Government decided not to present a defense on Qualcomm's behalf. Also, Qualcomm's failure to appear, means Qualcomm "waived its right to present later argument in another Court", or "to offer evidence and advance legal arguments appropriate to protect its own interests".

"[T]he Federal Circuit held in *In re UUSI, LLC*; 110 Fed. Cl. 604 (2013), "that a third party's [Qualcomm] potential obligation to indemnify the government for any patent infringement liability provides "sufficient interest in litigation to offer evidence and advance legal arguments appropriate to protect its own interests."

Qualcomm had six years "to offer evidence and advance legal arguments appropriate to protect its own interests." In other words, Qualcomm had six years to show that Plaintiff's patents and/or Plaintiff's patent claims are invalid, and that there's no infringement. Qualcomm made the decision not to appear and the Government made the decision not to continue defending Qualcomm against the allegations of contributory patent infringement.

This alone is enough to strike and dismiss Qualcomm's Motion to Dismiss, and to grant Plaintiff's motion for summary judgement.

Pursuant to FRCP Rule 56: Plaintiff has shown that there is no genuine dispute as to any material fact; no reason to prolong summary judgement in this case; and, no genuine dispute as to who own the patent rights for the CMDC devices and CPUs designed specifically for Plaintiff's CMDC devices, Qualcomm is unjustly enriching itself with. Plaintiff is entitled to judgment as a matter of law.

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE DEFENDANT HAS NOT PRESENTED A MERITORIOUS DEFENSE

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is collecting a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone) that Plaintiff alleges is his patented communicating, monitoring, detecting, and controlling (CMDC) device (i.e., new and improved cell phone; smartphone). Plaintiff alleged "Qualcomm engaged in 'anticompetitive conduct that reasonably appear[s] capable of making significant

contribution to . . . maintaining monopoly power'." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Qualcomm fail to defend against Plaintiff's claim that Qualcomm does not have the patent(s), patent rights, license, or authorization to collect a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone). Plaintiff alleges he has the patent(s), and patent rights to collect a royalty on the price of each handset sold (i.e., new and improved cell phone; smartphone).

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of each phone sold, i.e., handset; smartphone, etc. According to Judge Koh, *in FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK "Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition." The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices."

> "[t]he elements of unjust enrichment exist because: 1) Plaintiff provided something of value to the defendant Qualcomm; 2) Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and, 3) it would be inequitable for Qualcomm to enjoy the benefit Plaintiff provided without compensating Plaintiff"

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is being unjustly enriched for "tying" a CPU that Plaintiff alleges infringes his patented CPU—designed for use with Plaintiff's patented new and improved cell phones and smartphones—to its cellular modems and selling the component as a system-on-a-chip (SoC).

Qualcomm fail to defend against Plaintiff's contributory infringement claim that Qualcomm sells a Snapdragon CPU/Chipset/SoC that would be useful only if combined with Plaintiff's patented products of at least a new and improved cell phone, smartphone, handset, smartwatch, or stall, stop, vehicle slowdown system.

Qualcomm fail to defend against Plaintiff's claim that all of the alleged violations listed above was allegedly done by Qualcomm, with the goal of maintaining a monopoly.

> "… exploit existing public resources, in the form of people with smartphones …; as a Qualcomm representative argued: "Let's take advantage of the 300 million cell phones that are out there today. They're always with us" (Hoffman, 2011) Hoffman, D., Program Manager at Qualcomm, (2011). Qualcomm Project Presentation. Cell-All Live Demonstration for Environmental Sensing (Webcast), September 28. (accessed 17.09.12).

8

Qualcomm fail to defend against Plaintiff's claim that Plaintiff suffered from antitrust injuries. Qualcomm fail to argue antitrust standing. Plaintiff has "shown he suffered an antitrust injury and that Plaintiff is the proper party to bring suit."

Pursuant to FRCP Rule 55: Plaintiff has shown that there is no genuine dispute as to any material fact; no reason to prolong a default judgement in this case; and, no genuine dispute as to whether Qualcomm has presented a meritorious defense. Plaintiff is entitled to default judgment as a matter of law.

**Antitrust Injury**

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is collecting a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone) that Plaintiff alleges is his patented communicating, monitoring, detecting, and controlling (CMDC) device (i.e., new and improved cell phone; smartphone). Plaintiff alleged "Qualcomm engaged in 'anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power'." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Plaintiff alleges he has suffered an antitrust injury because Plaintiff owns the patent(s), and patent rights to collect a royalty on the price of each handset sold (i.e., new and improved cell phone; smartphone).

In the opinion of the U. S. District Court for the District of Northern California; "Qualcomm leveraged its monopoly position in chips to secure unreasonably high rates for its SEPs. Qualcomm, for example, refused to provide must-have chips unless customers took the unreasonable IP licenses—the "no license, no chip" model.

Judge Koh, *in FTC v. Qualcomm Inc.*, reasoned that, "set against the backdrop of this illegal refusal to deal, the cost-raising "no license, no chip" policy hindered rivals, leading to anticompetitive harm in modem chips. Here, Judge Koh, quoting the D.C. Circuit's decision in *United States v. Microsoft Corp.*, held it sufficient that Qualcomm engaged in "anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Qualcomm's "no license, no chip" policy is designed to force sell CPUs Plaintiff believe infringes his patented CPUs, that's tied to Qualcomm's cellular modem. Qualcomm's "no

license, no chip" policy is only made possible by Qualcomm's unauthorized use of allegedly infringing CPUs of Plaintiff's patented CMDC devices (i.e., smartphones; handsets of OEM's).

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of each phone sold, i.e., handset; smartphone, etc. The elements of unjust enrichment exist because: 1) Plaintiff provided something of value to the defendant Qualcomm; 2) Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and, 3) it would be inequitable for Qualcomm to enjoy the benefit Plaintiff provided without compensating Plaintiff.

The United States District Court Northern District of California; *Federal Trade Commission v. Qualcomm Incorporated*, "FINDINGS OF FACT AND CONCLUSIONS OF LAW" Case 5:17-cv-00220-LHK; Document 1490 Filed 05/21/19; Presiding United States District Judge Lucy H. Koh has concluded Qualcomm is being unjustly enriched from its anticompetitive practices:  "Qualcomm stopped licensing rival modem chip suppliers and instead started licensing only OEMs at a ***5% running royalty on the price of each handset sold***. These licenses are called Subscriber Unit License Agreements ("SULA") …"

"Specifically, Qualcomm charges a 5% running royalty on handset sales for a license to Qualcomm's CDMA patent portfolio. Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition.  The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said all violations of the Sherman Act also violate the FTC Act.

Judge Lucy Koh issued her decision in *FTC v Qualcomm*. The facts that were key in the Judge's analysis included the following:

- Qualcomm employed a business model where it sold chips to handset makers under a supply agreement, while simultaneously licensing its SEPs to them under what it called a 'subscriber unit license agreement' (SULA). Under the SULA, the handset makers pay royalties of 5% on the price of each phone sold…

Qualcomm's anticompetitive practices has destroyed all possibilities for the Plaintiff to receive royalty compensation for Plaintiff's patented CMDC (handset) devices and Plaintiff's patented CPUs. The OEMs are already paying royalties to Qualcomm on every handset sold; and, the OEMs are already paying an increased royalty rate for Qualcomm's chipsets that include

Plaintiff's patented CPUs. This injury is of the type the antitrust laws were intended to prevent; which makes the defendant's conduct unlawful.

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of the phone, i.e., Plaintiff's CMDC device; handset; smartphone, etc. Plaintiff has the right to exclude Qualcomm from "using" Plaintiff's CMDC devices—handsets to unjustly enrich itself.

Plaintiff is entitled to stop Qualcomm's use of the Plaintiff's inventions to generate revenue (5% royalty on each handset sold) by seeking a legal injunction in Federal Court.

Qualcomm's anticompetitive practices has restrained Plaintiff from entering the market to collect royalties on his patented inventions. Plaintiff is entitled to collect damages from Qualcomm for any unlicensed use of his inventions. Damages are generally calculated based on lost profits Plaintiff suffered as a result of the antitrust injury.

The Federal Trade Commission and U. S. District Court for the District of Northern California has already determined Qualcomm's anticompetitive practices include collecting royalties on the price of each handset sold. This issue was not overturned by the Ninth Circuit and Qualcomm has not corrected the matter.

Pursuant to FRCP Rule 56: Plaintiff has shown that there is no genuine dispute as to any material fact; no reason to retry the *FTC v. Qualcomm* case; and, no genuine dispute as to who own the patent rights for the handsets Qualcomm is unjustly enriching itself with. Plaintiff is entitled to judgment as a matter of law.

Plaintiff is willing to settle damages at 5% of the estimated total annual revenues Qualcomm has receive beginning in year 2010 and carried through 2026 [$439.31B]. To compensate Plaintiff for his antitrust injury, Plaintiff is asking the Court to award Plaintiff $20B; which is 4.6% of Qualcomm's total revenue for the years 2010-2026. Under the Clayton Act, if Qualcomm refuses or challenges this offer, Plaintiff is asking the Court to triple the amount for the antitrust injury.

**Qualcomm's Combined Forward Look and**
**Actual Annual Revenues for years 2010–2026**
*(Data retrieved from Macrotrends)*

| | |
|---|---|
| **Total Revenue** | **$439.317B** |

## Contributory Infringement

Plaintiff's contributory infringement claim is demonstrated when Qualcomm sells a Snapdragon CPU/Chipset/SoC that would be useful only if combined with Plaintiff's patented products of at least a new and improved cell phone, smartphone, handset, or stall, stop, vehicle slowdown system (Advanced Driver Assistance System (ADAS)).

**Defendant Fabricates 'Notice Requirement' for Contributory Infringement:**
Amongst the many areas the Defendant is attempting to misguide this Court, the Defendant has only concocted the requirement of 35 U.S.C. § 271(c) to include putting a Defendant on notice. Defendant writes: "Plaintiff failed to plead a claim for direct infringement because the Complaint does not include facts sufficient to put Qualcomm on notice of the accused infringement" … "[a] complaint must "place the potential infringer…on notice of what activity … is being accused of infringement" … "Plaintiff fell fall short putting Qualcomm on notice of the accused infringement." 35 U.S.C. § 271(c) does not include a notice requirement:

> "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

35 U.S.C. § 271(c) only has a knowledge requirement and an intent requirement. Qualcomm must know of the patent(s) to be liable for its contributory infringement: "§ 271(c) requires knowledge of the existence of the patent that is infringed." *Global-Tech* (U.S. 05/31/2011) (calling this "§ 271(c)'s intent requirement."). § 271(c) does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. (Aro II)* (U.S. 06/08/1964); "In *Aro II*, a majority held that a violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing, '377 U.S., at 488.

Therefore, Qualcomm's misguided and concocted theories of "fail to show direct infringement" and "fail to give notice requirement" is only introduced to prolong this case and to have Plaintiff defend a theory that is not founded in contributory infringement law.

Qualcomm commits contributory infringement when Qualcomm supply the Snapdragon CPU/Chipset/SoC as components of a patented invention, knowing that the components will be

used to infringe Plaintiff's patents. Qualcomm may be held liable for contributory patent infringement even though Qualcomm did not actually engage in infringing activities.

Qualcomm is directing this Court's attention to direct infringement only; not as a necessary predicate to proving contributory infringement, but to get the Court to dismiss Plaintiff's case for failure to give Qualcomm notice of the direct infringement [Qualcomm knew the Snapdragon CPU/Chipset/SoC will be used to infringe Plaintiff's patents or designed for infringing use. (35 U.S.C. § 271(c)]. For this reason, also, Defendant's Motion to Dismiss should be stricken from the record and dismissed.

Unlike direct infringement, the standard for contributory infringement imposes a knowledge requirement. The contributory infringer must have known that the component, material or apparatus was either: Used to infringe a patent or designed for infringing use. (35 U.S.C. § 271(c)).

Qualcomm has had nine (9) years to present a patent(s) that proves Qualcomm has patent rights to exclude others from making, using, selling, or offering for sale, a CMDC device of at least that of a handset, smartphone, or new and improved cell phone.

Qualcomm has had an equal amount of time to pull from the original engineering manufacturers (OEMs)—Apple, Samsung, & LG—collection of patents to produce at least one patent that gives Qualcomm the patent rights to exclude others from making, using, selling, or offering for sale, a CMDC device of at least that of a handset, smartphone, or new and improved cell phone.

Willful infringement requires that Plaintiff plead Qualcomm were "aware of the asserted patents but acted despite an objectively high likelihood that [their] actions constituted infringe-ment of Plaintiff's valid patents." The complaint adequately alleges that Qualcomm committed acts of infringement with full knowledge of the Plaintiff's rights in its patents. That is sufficient.

Pursuant to FRCP Rule 56: Plaintiff has shown that there is no genuine dispute as to any material fact; no reason to retry the *FTC v. Qualcomm* case; and, no genuine dispute as to whether Qualcomm's alleged contributory infringement is willful. Plaintiff is entitled to judgment as a matter of law.

Plaintiff is willing to settle damages at 5% of the estimated total annual revenues Qualcomm has receive beginning in year 2010 and carried through 2026 [$439.31B] (*Data retrieved from Macrotrends*). Plaintiff is asking the Court to award Plaintiff $20B, which is 4.6%

of Qualcomm's total revenue. If Qualcomm refuses or challenges this offer, Plaintiff is asking the Court to triple the amount for willful infringement.

## QUALCOMM HAS NO GENUINE DISPUTE AS TO SUBJECT MATTER JURISDICTION

Pleading patent infringement does not require a claim chart, says a court considering the requirements for pleading both direct and indirect [contributory] infringement under *FRCP 8* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Crypto Research, LLC v. Assa Abloy, Inc.*, No. 16 Civ. 1718 (AMD) (RER) (E.D.N.Y. Feb 17, 2017), "the mere sale of [Qualcomm's Snapdragon CPU/Chipset/SoC] is enough to plead Qualcomm's intent to induce its end-users' infringement."

In this case Plaintiff has submitted into record, seven of Plaintiff's patents that are issued with the *presumption of validity* to show Plaintiff owns the patent rights to the "smartphone".

> ***35 U.S.C. § 282(a). In General****. A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.*

Issued patents are not *frivolous*. "A patent shall be presumed valid." 35 U.S.C. § 282. The courts have interpreted this statutory provision to mean that, in order for a challenger to prove that a patent is invalid for violating one of the provisions of the Patent Act, he must make such proof by the heightened standard of 'clear and convincing' evidence.

The rationale behind this statutory provision is that the PTO is a Federal agency that has already passed on the validity of the claims of issued patents. Patent examiners are presumed to be experts in the subject matter of reviewing patent applications and granting patents. Thus, for the initial Federal review by an expert to have any meaning, a challenger must present evidence that reaches a higher level than merely more likely than not.

The threshold requirement for a claim of contributory infringement is the existence of direct infringement. *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972).

When Qualcomm, sells or offers to sell a component or part [Qualcomm's Snapdragon CPU/Chipset/SoC] that's used exclusively for a patented item [Plaintiff's CMDC device—new

and improved cell phone, smartphone, etc.] or process; is likely contributorily liable. Qualcomm do not have to be involved in the sale, manufacture or use themselves to be liable.

Plaintiff's is only responsible for showing that the existence of direct infringement is with the new and improved cell phone or smartphone, not, with the central processing unit (CPU).

## RELIEF

Plaintiff is asking the Court to grant Plaintiff's Motion for Summary Judgement. Plaintiff has alleged Defendant's "failure to appear" and "default" was *willful* and that Defendant's pattern of not appearing or responding to summons, is not the first. Defendant fail to appear to protect in interest against the alleged patent infringement claims of Plaintiff, (*Golden v. USA*).

It is the belief of Plaintiff that setting aside the default judgement will prejudice Plaintiff. Plaintiff also believes the Defendant has not presented a meritorious defense. For these reasons, Plaintiff is entitled to default judgment and summary judgement as a matter of law.

Plaintiff is asking the Court to strike Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, and Attachments: # 1 Memorandum of Points and Authorities, # 2 Proposed Order, # 3 Certificate/Proof of Service, # 4 Declaration, # 5 Declaration, # 6 Exhibit 1, # 7 Exhibit 2, # 8 Exhibit 3) Filed as (Dkt. 6) on 7/22/2022, because a default judgement nullifies the Motion to Dismiss.

Sincerely,

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of August, 2022, a true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgement", was served upon the following Defendant by priority "express" mail:

> Joseph John Stevens
>
> PATTERSON & SHERIDAN, LLP
>
> 50 West San Fernando Street, Suite 250
>
> San Jose, CA 95113
>
> Phone: (650) 384-4418
>
> Fax: (650) 330-2314
>
> Email: jstevens@pattersonsheridan.com

_____

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605