# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

F I L E D

AUG 16 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LARRY GOLDEN

*Pro Se* Plaintiff,

V.

QUALCOMM INC.

Defendant.

CASE NO: 4:22-cv-03283-HSG

**(JURY TRIAL DEMANDED)**

**(Sherman Act) (Motive to Form a Conspiracy) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**

August 15, 2022



## PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

Plaintiff believes this current case no: 4:22-cv-03283-HSG *Golden v. Qualcomm* and the currently related pending case no. 5:22-cv-03828-NC *Golden v. Intel Corporation* should be considered related.

As defined in Civil L.R. 3-12(a), Plaintiff is promptly filing this motion in the lowest-numbered case *Golden v. Qualcomm*; this Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civil L.R. 7-11.

The *Golden v. Intel* case no. 5:22-cv-03828-NC should be assigned to the Judge in this District who is assigned to the lowest-numbered case; which is *Golden v. Qualcomm*, case no: 4:22-cv-03283-HSG, for the following reasons:

1. The actions concern substantially the same patents, property [chipsets], transaction, and event [ignoring Plaintiff's notice letters and offer to enter into a licensing agreement], and;
2. It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges.

In both the Qualcomm case and the Intel case have the same 'causes of action' of Antitrust law violations (i.e., "tying", unjust enrichment, Sherman & Clayton Acts, anticompetitive conduct for maintaining a monopoly); and, Indirect (contributory) infringement; and infringement by "use" of Plaintiff's patented product(s) to generate billions in revenue, are claimed.

Both are being accused of alleged indirect (contributory) infringement of Plaintiff's patents. Both have an illustrative claim chart, and an element-by-element claim chart as evidence Plaintiff owns the patent rights for the products grouped together by common features of design similarities of at least a cell phone, desktop PC, laptop, tablet, smartphone, or smartwatch.

In both the Qualcomm case and the Intel case, the same patents and patent claims (claim 1 of the '497 patent; claim 10 of the '752 patent; claims 1-9 the '189 patent; claims 13-23 the '439 patent; claims 4-6 the '287 patent; claims 1-20 the '619 patent; and, claims 44-53 the '891 patent;) are being asserted.

Both Qualcomm and Intel are being accused of willfully ignoring Plaintiff's patents, Plaintiff's licensing proposals. "A federal jury ruled the Santa Clara, California-based company Intel infringed on a pair of patents held by VLSI Technology, a semiconductor design firm. The jury ordered it to pay damages of $1.5 billion on the first patent and $675 million on the second patent, for a total of $2.175 billion. VLSI Technology accused Intel of willfully ignoring its patents and infringing on them in its central processing chips."

Further, Intel was an Intervenor in the recent case of the *FTC v. Qualcomm*. Intel is not only a Defendant in this current case, but is also a witness to the anticompetitive conduct of Qualcomm where Intel testified to Qualcomm's harm to competition; harm to Intel as a single

firm; and, the harm Qualcomm has caused by charging a "5% running rate on the price of each handset sold", without a patent, licensing agreement, or authorization to do so.

"The Court finds credible the testimony of Aicha Evans (Intel Chief Strategy Officer), who testified—consistently with the contemporaneous Apple emails—that it was the FATA, not Intel's technical execution, that forced Apple to stop working with Intel: "The reason was that they had, the company, Apple, had some type of business agreement with Qualcomm and that we would get a chance back for the 2016 launch, which means an engagement in 2015." Tr. at 572:1-7. ... Evans testified that losing the Apple iPad Mini 2 meant that Intel lost Apple's engineering support, in addition to the iPhone business that could have followed: "We went back to the kid's table in the sense that we didn't have now that deep engagement with their engineers and so on and so forth." Id. at 572:21-23." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 98 of 233*

"Evans also testified that losing the Apple business harmed Intel's standing in the industry: "It also sort of slowed us down in terms of getting to a more credible position with the operators, as well as with, with standards and TEMS. So, yeah, it set us back two years, and, frankly, it was a near-death experience." Id. at 573:19-23. TEMS are network testing companies. Id. at 578:19-20. Thus, the FATA had cascading negative effects on Intel." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 98 of 233*

"Finally, in late 2016, Apple launched a handset with an Intel modem chip. Qualcomm's rival Intel reaped significant benefits after Apple selected Intel to supply modem chips for a 2016 iPhone." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 102 of 233* ... "Aicha Evans (Intel Chief Strategy Officer) testified that after Intel won Apple's business, other OEMs reached out about Intel's modem chips: "Lenovo is an example, LG is an example, Motorola is an example, Tesla is an example." Tr. at 576:20-577:4 ... Aicha Evans (Intel Chief Strategy Officer) also testified that when working with Apple, a modem chip supplier gains increased standing in SSOs and with operators (also referred to as carriers, like Verizon)" *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 103 of 233*

"Qualcomm engaged in anticompetitive conduct with respect to Apple by (1) refusing to sell Apple modem chips or even share sample chips until Apple signed a

3

patent license; (2) eliminating a competing cellular standard that Intel was supporting; (3) attempting to require Apple to cross-license its entire patent portfolio to Qualcomm; and (4) using Qualcomm's monopoly power to enter exclusive deals with Apple that foreclosed Qualcomm's rivals from selling modem chips to Apple from 2011 to September 2016." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Pgs. 82 & 83 of 233*

"In 2013, Qualcomm again gave Apple royalty rate rebates in exchange for Apple's effective commitment to purchase modem chips exclusively from Qualcomm. Although Apple had planned to purchase modem chips from Qualcomm's rival Intel, Qualcomm's 2013 exclusive deal foreclosed Intel (and Qualcomm's other rivals) from working with Apple until September 2016." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 93 of 233*

"Specifically, Qualcomm sought continued exclusivity to prevent Apple from working with Intel, a rival modem chip supplier. Apple was in contact with multiple modem chip suppliers in 2011 and 2012, but only Intel proved to be a viable Qualcomm alternative." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 93 of 233*

"Aicha Evans (Intel Chief Strategy Officer) testified that Intel's early exposure to Apple provided technical benefits to Intel: "First of all, you just execute, but you start gaining experience and exposure. You also get what I call the halo effect of better presence in the standards." Tr. at 569:8-10." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 94 of 233*

"Around that time, Qualcomm knew that Intel was a threat to win Apple's business. Eric Koliander (QCT Vice President, Sales) sent a December 2012 email about Apple's sourcing plans to Steve Mollenkopf (Qualcomm President). CX5378-002. Koliander reported in the email, "Maverick [Qualcomm's code name for Apple] does appear to be working with Intel and we believe, Mav has assigned software and hardware engineering resources to the development of an Intel based platform." Id. Koliander continued, "It is unlikely that Mav would launch an Intel based product until late 2013 earliest (believed to be data only for iPad)." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Pgs. 94 & 95 of 233*

"Qualcomm projected that Apple's purchase of Qualcomm modem chips could represent approximately 25% of QCT's total modem chip revenue in 2013. Id. Thus, Qualcomm structured two 2013 agreements to ensure that Apple would continue to purchase modem chips exclusively from Qualcomm, and not from Intel (or any other rival). In January 2013, Steve Mollenkopf (Qualcomm President) explained in an email to Derek Aberle (QTL President) and Paul Jacobs (Qualcomm CEO) that the FATA would sacrifice short-term profits for long-term exclusivity" *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 95 of 233*

"Tony Blevins replied that because Blevins made the deal with Intel to use an Intel modem chip, Blevins would tell Intel that the "new QC strategy"—i.e., the FATA—had changed Apple's product plan and prevented Apple from working with Intel." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 95 of 233*

"Aicha Evans (Intel Chief Strategy Officer) also testified at trial that Qualcomm attempted to ban Apple from importing its handset with Intel chips in proceedings before the International Trade Commission ("ITC"): ... Later, Qualcomm also cut off Apple's supply of new chips. In spring 2017, Steve Mollenkopf (Qualcomm CEO) testified, Apple's contract manufacturers stopped paying royalties to Qualcomm for Apple handset sales. Tr. at 836:16-25. According to Jeff Williams (Apple COO), Qualcomm then refused to provide Apple with any chips for new devices, although Qualcomm continued to ship Apple modem chips for older iPhones. As a result, Williams testified at trial, none of Apple's 2018 handset models contain Qualcomm modem chips and Apple has purchased modem chips for 2018 handsets solely from Intel." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Pgs. 104 & 105 of 233*

"Qualcomm has twice refused to license Intel, a rival modem chip supplier, which delayed Intel's entry into the CDMA and premium LTE modem chip markets ... In 2004, Sean Maloney (Intel) emailed Dr. Irwin Jacobs (Qualcomm CEO and co-founder) to propose that Intel receive a "license to Qualcomm patents in a completed cross-license agreement." CX7580-002. Steve Altman (then a Qualcomm lawyer, later Qualcomm President) responded to Maloney and Irwin Jacobs and rejected Intel's request" *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 119 of 233*

"Qualcomm's exclusive deals with Apple also contain … other anticompetitive indicia, including Qualcomm's intent to prevent Intel from selling modem chips to Apple. Lastly, Qualcomm's exclusive deals with Apple cannot be viewed in isolation, as Qualcomm has given several other OEMs chip incentive funds that further foreclose the market available to Qualcomm's rivals. The Court addresses each point in turn." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Pgs. 146 & 147 of 233*

"Aicha Evans (Intel Chief Strategy Officer) testified that no component supplier—"except for one, Qualcomm"—requires OEMs to sign a license before purchasing components. Tr. at 555:2-4." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 164 of 233*

"Thus, Qualcomm eliminated a competing cellular standard supported by Intel not because WiMax was inferior, but to eliminate competition." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 195 of 233*

"In addition, even though Intel is supplying modem chips to Apple, Aicha Evans (Intel Chief Strategy Officer) testified that Intel has never met its target margins and that Intel's sales of modem chips to Apple have not yet been profitable. Tr. at 587:12-22. When asked about the probable effect of losing Apple's business in any given year, Evans testified that losing Apple's business "would not be near death, that would be death." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 207 of 233*

Sincerely,

*Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

6

## **CERTIFICATE OF SERVICE**

In addition to complying with Civil L.R. 7-11, a copy of the motion, together with proof of service pursuant to Civil L.R. 5-5, is being served on all parties to each apparently related action. A courtesy copy of the motion is be lodged with the assigned Magistrate Judge in apparently related case under Civil L.R. 5-1(d)(7). Service by priority mail on 08/15/2022.

The undersigned hereby certifies that on this 15th day of August, 2022, a true and correct copy of the foregoing "Plaintiff's Administrative Motion to Consider Whether Cases Should Be Related", was served upon the following Defendant by priority "express" mail:

>Joseph John Stevens
>PATTERSON & SHERIDAN, LLP
>50 West San Fernando Street, Suite 250
>San Jose, CA 95113
>Phone: (650) 384-4418
>Fax: (650) 330-2314
>Email: jstevens@pattersonsheridan.com

*/s/ Larry Golden*
Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605

7