# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

FILED

AUG 2 3 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



|  |  |
|---|---|
| LARRY GOLDEN<br><br>*Pro Se* Plaintiff,<br><br>V.<br><br>QUALCOMM INC.<br><br>Defendant. | CASE NO: <u>4:22-cv-03283-HSG</u><br><br>**(JURY TRIAL DEMANDED)**<br><br>**(Sherman Act) (Motive to Form a Conspiracy) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**<br><br>August 21, 2022 |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

Plaintiff believes this current case no: 4:22-cv-03283-HSG *Golden v. Qualcomm* and the currently related pending case no. 5:22-cv-03828-NC *Golden v. Intel Corporation* should be considered related.

As defined in Civil L.R. 3-12(a), Plaintiff is promptly filing this motion in the lowest-numbered case *Golden v. Qualcomm*; this Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civil L.R. 7-11.

The *Golden v. Intel* case no. 5:22-cv-03828-NC should be assigned to the Judge in this District who is assigned to the lowest-numbered case; which is *Golden v. Qualcomm*, case no: 4:22-cv-03283-HSG, for the following reasons:

1. The actions concern substantially the same patents, property [chipsets], transaction, and event [ignoring Plaintiff's notice letters and offer to enter into a licensing agreement], and;

2. It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges.

In both the Qualcomm case and the Intel case have the same 'causes of action' of Antitrust law violations (i.e., "tying", unjust enrichment, Sherman & Clayton Acts, anticompetitive conduct for maintaining a monopoly); and, Indirect (contributory) infringement; and infringement by "use" of Plaintiff's patented product(s) to generate billions in revenue, are claimed.

Both are being accused of alleged indirect (contributory) infringement of Plaintiff's patents. Both have an illustrative claim chart, and an element-by-element claim chart as evidence Plaintiff owns the patent rights for the products grouped together by common features of design similarities of at least a cell phone, desktop PC, laptop, tablet, smartphone, or smartwatch.

In both the Qualcomm case and the Intel case, the same patents and patent claims (claim 1 of the '497 patent; claim 10 of the '752 patent; claims 1-9 the '189 patent; claims 13-23 the '439 patent; claims 4-6 the '287 patent; claims 1-20 the '619 patent; and, claims 44-53 the '891 patent;) are being asserted.

Both Qualcomm and Intel are being accused of willfully ignoring Plaintiff's patents, Plaintiff's licensing proposals. "A federal jury ruled the Santa Clara, California-based company Intel infringed on a pair of patents held by VLSI Technology, a semiconductor design firm. The jury ordered it to pay damages of $1.5 billion on the first patent and $675 million on the second patent, for a total of $2.175 billion. VLSI Technology accused Intel of willfully ignoring its patents and infringing on them in its central processing chips."

Further, Intel was an Intervenor in the recent case of the *FTC v. Qualcomm*. Intel is not only a Defendant in this current case, but is also a witness to the anticompetitive conduct of Qualcomm where Intel testified to Qualcomm's harm to competition; harm to Intel as a single

2

firm; and, the harm Qualcomm has caused by charging a "5% running rate on the price of each handset sold", without a patent, licensing agreement, or authorization to do so.

"Evans also testified that losing the Apple business harmed Intel's standing in the industry: "It also sort of slowed us down in terms of getting to a more credible position with the operators, as well as with, with standards and TEMS. So, yeah, it set us back two years, and, frankly, it was a near-death experience." Id. at 573:19-23. TEMS are network testing companies. Id. at 578:19-20. Thus, the FATA had cascading negative effects on Intel." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 98 of 233*

"Finally, in late 2016, Apple launched a handset with an Intel modem chip. Qualcomm's rival Intel reaped significant benefits after Apple selected Intel to supply modem chips for a 2016 iPhone." *Case 5:17-cv-00220-LHK Document 1490 Filed 05/21/19 Page 102 of 233* …"

## CONCEPTION OF THE CMDC DEVICES BEING USED BY QUALCOMM AND INTEL

I can remember September 11, 2001 (9/11) is the day my life was changed forever. I was traveling through downtown Columbia, SC when I noticed the police and other authorities scrambling to protect vulnerable buildings and sites from what may be another terrorist attack.

When I return home to Mauldin, SC I watched the attacks over and over again all day long, thinking to myself, I have to do something. I can remember watching the explosions when the airplane hit the towers, thinking there must be a way to detect for CBRNE agents that's being carried on or in a moving vehicle. That's the concept behind my SafeRack & V-Tection projects.

I decided to separate the two projects for the moment to develop a strategy of using the technical rational behind the SafeRack project (detection devices for CBRNE-H detection), and the technical rational behind the V-Tection project (stall, stop, vehicle slowdown); to create economic stimulus packages for restoring our Nation's economy (new businesses and jobs).

I designed a "product grouping" strategy to outline the advantages of grouping products of common features and design similarities for mass producing to reduce cost. The "demand" had to be generated for the new products. That's where the Government agencies comes in.

But, before campaigning to generate the demand for the technology, I knew, I needed a device that's capable of communicating, monitoring, detecting, and controlling (CMDC), that can be used to not only connect or integrate the technology for the SafeRack and V-Tection projects, but that can also be used by both the Government and the American consumer. I decided to call this project the Anti-Terrorism Product Grouping (ATPG) project.

For consumer use, I knew, I had to include some safety features such as using NFC instead of RFID (DHS demonstrated how RFID can be used to detonate bombs); biometric authentication (i.e., fingerprint, facial, etc.); advanced tracking and location; and, a lock disabling mechanism that locks the CMDC device after multiple failed attempts to unlock.

I began my campaign by sending the "Economic Stimulus and Terrorism Prevention Packages" to three U.S. Senators from South Carolina. They in turn sent me letters, notifying me that they had sent the packages over to the Department of Homeland Security (DHS).

Next, I sent the "Economic Stimulus and Terrorism Prevention Packages" to the President and Vice-President of the United States. Both their offices sent me a letter, notifying me that they had sent the packages over to the Department of Homeland Security (DHS). I also sent the packages to the President's Council of Economic Advisors.

When I call the President's Council of Economic Advisors, they informed me that they had the packages but could not move on them until the President say so.

I was invited to the DHS to discuss my "product grouping" strategy and the technical rational behind each of the packages, three times. On one occasion, my lead engineer traveled with me. I was asked to send a read-ahead document before the meeting that describes my work.

The first solicitation for the assembly and development of my CMDC device was issued in 2007 [DHS S&T BAA07-10, *Cell-All Ubiquitous Biological and Chemical Sensing*]. DHS was seeking proposals for a new cell phone capable of biological and chemical sensing.

For the program's initial phase in 2007, DHS released a call for proposals inviting the ***private sector*** to develop a proof of concept for the "*Cell-All Ubiquitous Biological and Chemical Sensing*" project (U.S. Department of Homeland Security, 2007). Cell-All Ubiquitous Biological and Chemical Sensing. <https://http://www.fbo.gov/index?s=opportunity&mode=form&id =f292c1fdbd46777a3ff8ca64ef96658f&tab=core&_cview=1> (accessed 17.09.12).

DHS S&T secured Cooperative Research and Development Agreements with four primary cell phone manufacturers—Qualcomm, LG, Apple, and Samsung—with the objective of

4

accelerating the "commercialization of technology developed for government purposes" (U.S. Department of Homeland Security, 2010, Cell-All: Super Smartphones Sniff Out Suspicious Substances <http://www.dhs.gov/cell-all-super-smartphones-sniff-out-suspicious-substances>.

After years (2002-2008) of educating the Government on how to stimulate the economy with my new and innovative technology, the DHS gave it all away to Qualcomm, Apple, Samsung, and LG. That's why Qualcomm, Apple, Samsung, and LG fail to appear in the case when the Government issued the notices. They would have to give testimony under oath.

## DEFENDANTS' QUALCOMM & INTEL'S DUPLICATION OF PLAINTIFF'S INTELLECTUAL PROPERTY SUBJECT MATTER INVENTIONS

Even after *Twombly and Iqbal*, "in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true', [e]ven if their truth seems doubtful." (quoting *Twombly*, 550 U.S. at 556).

At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim.'" (quoting *Crypto Res., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017))

In *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'" Id. at 1350 (quoting *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (emphasis added).

**Everything Mentioned in the Above Section is Covered in Plaintiff's Patent Claims**

I. Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., new and improved cell phone; smartphone, etc.) – Claim 23 of the '439 Patent

    a) Central Processing Units for CMDC Device – Claim 5 of the '287 Patent

    b) Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent

    c) Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent

    d) Embedded CBRN Sensors for CMDC Device – Claim 16 of the '439 Patent

    e) Interchangeable Sensors for CMDC Device – Claim 20 of the '439 Patent

f)  NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent

g)  Remote/Electrical Lock for CMDC Device – Claim 125 of the '990 Patent

h)  Pre-Programmed Lock for CMDC Device – Claim 1 of the '287 Patent

i)  Fingerprint / Face Recognition for CMDC Device – Claim 1 of the '619 Patent

j)  Stall, Stop, Slowdown for CMDC Device – Claim 11 of the '891 Patent

k)  Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent

l)  Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent

m)  Internet-of-Things (IoTs) with CMDC Device – Claim 11 of the '619 Patent

Plaintiff claims Qualcomm is using the allegedly infringing OEMs new and improved cell phone (i.e., smartphones); to generate tens of billions of dollars in revenue. Claim 23 of Plaintiff's '439 patent demonstrates how Plaintiff's new and improved cell phone (i.e., smartphone) is capable of communicating, monitoring, detecting, and controlling. Plaintiff's new and improved cell phone (i.e., smartphone) comprises "a central processing unit (CPU) for executing and carrying out the instructions…"

| Claim 23 of Plaintiff's '439 Patent | |
| --- | --- |
| **PREAMBLE** | *A cell phone comprising*:<br><br>a central processing unit (CPU) for executing and carrying out the instructions of a computer program; |
| **COMMUNICATING** | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range … (RF) connection, short … frequency (RF) connection, or GPS connection; |
| **MONITORING** | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked … biometric lock disabler to prevent unauthorized use; |
| **DETECTING** | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; |
| **CONTROLLING** | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone … device; |

Plaintiff claims Qualcomm and Intel is using the allegedly infringing central processing units CPUs that's designed to be used with Plaintiff's communication devices of at least a computer terminal, a personal computer (PC), a laptop, a desktop, a notebook, a handheld, a cell phone, a PDA or a smart phone; to generate tens of billions of dollars in revenue. Claim 4 of Plaintiff's '287 patent demonstrates how each limitation describes what operational and functional instructions Plaintiff's CPUs are expected to perform. The CPU is the "brain" of the CMDC device and is therefore essential.

| Claim 4 of Plaintiff's '287 Patent | |
|---|---|
| **PREAMBLE** | ***A communication device comprising***:<br>at least one central processing unit (CPU); |
| <u>C</u>OMMUNICATING | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU |
| <u>M</u>ONITORING | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device |
| <u>D</u>ETECTING | at least one or more detectors in communication with the art least one CPU for detecting at least one of a chemical, biological, radiological, or explosive agents; |
| <u>C</u>ONTROLLING | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or send signals to detect at least one of a chemical biological, radiological, or explosive agent … |
| <u>C</u> <u>M</u> <u>D</u> <u>C</u> | … such that the communication device is capable of ***communicating, monitoring, detecting, and controlling*** |

Plaintiff claims Intel is using the allegedly infringing OEMs personal computer (PCs), laptops, and desktops to generate tens of billions of dollars in revenue. Claim 2 of Plaintiff's '189 patent demonstrates how each limitation include products grouped together by common features in the product groupings category of design similarity. The CMDC devices Plaintiff alleges Intel is "using" without authorization of the Patent Owner, is also "implemented by business or government".

| Claim 2 of Plaintiff's '189 Patent | |
|---|---|
| **PREAMBLE**<br>*(Product Grouping)* | *Monitoring equipment* of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e., computer terminal, *personal computer (PC), laptop, desktop*, notebook, handheld, cell phone, PDA or smart phone) interconnected to a product for communication therebetween, comprising: |
| **COMMUNICATING**<br>*(Product Grouping)* | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection |
| **MONITORING**<br>*(Product Grouping)* | a lock disabling mechanism that is able to engage (lock) and disengage (unlock) and disable (make unavailable) a product's lock, wherein the lock disabling mechanism disables the product's lock after a specific number of tries by an unauthorized user to disengage the lock by maintaining the product's lock in the current state of the product's lock regardless of input entered to change the state of the product's lock by the unauthorized user |
| **DETECTING**<br>*(Product Grouping)* | a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device |
| **CONTROLLING**<br>*(Product Grouping)* | whereupon the monitoring equipment, is interconnected to a product equipped to receive signals from or send signals to the lock disabling mechanism that is able to engage and disengage or disable the lock, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |
| **PRODUCT GROUPING** | wherein the monitoring equipment is implemented by business or government at a minimum cost by products grouped together by common features in at least one of several product groupings of design similarity |

Both Qualcomm and Intel are being accused of engaging in anticompetitive conduct. "[T]he Court may "infer 'causation' from the fact that a defendant has engaged in anticompetitive conduct that 'reasonably appear[s] capable of making a significant contribution to . . . maintaining monopoly power." *Microsoft*, 253 F.3d at 79 (citation omitted).

Both Qualcomm and Intel are being accused of indirect (contributory) infringement. "In light of his pro se status, we cannot say that he has failed to allege a patent infringement claim as a matter of law on the face of the complaint nor for any reason presented by defendant's motion. See *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-58 (Fed. Cir. 2007)."

Sincerely,

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of August, 2022, a true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's Administrative Motion to Consider Whether Cases Should Be Related", was served upon the following Defendant by priority "express" mail:

> John A. Yates
> PATTERSON & SHERIDAN, LLP
> 24 Greenway Plaza,
> Suite 1600
> Houston, Texas 77030
> Phone: 713-577-4817
> Email: jyates@pattersonsheridan.com

> Larry Golden, Pro Se
> 740 Woodruff Rd., #1102
> Greenville, South Carolina 29607
> atpg-tech@charter.net
> 864-288-5605

1007     94612     $26.95
R2305K142754-13

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE
### ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



EP13F May 2020



**UNITED STATES POSTAL SERVICE®**

**PRIORITY MAIL EXPRESS®**

EI 393 697 275 US

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)    PHONE 864-288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**
☑ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE 510-637-3530

U.S. DISTRICT COURT - NDC - OAKLAND
CASE NO: 4:22-CV-03283-HSG
1301 CLAY STREET, SUITE 400S
OAKLAND, CA

ZIP + 4® (U.S. ADDRESSES ONLY)

9 4 6 1 2 - ___ ___ ___ ___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.


**PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™

**ORIGIN (POSTAL SERVICE USE ONLY)**
☐ 1-Day   ☐ 2-Day   ☐ Military

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 29615 | 8-23-22 | $ 26.95 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 6:00 PM | Insurance Fee | COD |
|---|---|---|---|
| 8-22-22 | | $ | $ |

| Time Accepted | | Return Receipt Fee | Live |
|---|---|---|---|
| 2:26 ☐ AM ☐ PM | | $ | Trans |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ 26.95 | $ |

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| 3 lbs. 4.0 ozs. | | 8m |

**DELIVERY (POSTAL SERVICE USE ONLY)**
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

