# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

**FILED**

MAR 20 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

LARRY GOLDEN

*Pro Se* Plaintiff,

V.

QUALCOMM INC.

Defendant.

---

CASE NO: 4:22-cv-03283-HSG

**(JURY TRIAL DEMANDED)**

(Sherman Act) (Motive to Form a Conspiracy) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).

March 17, 2023

## PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff is as this Court to reconsider its Order Granting Defendant's Motion to Dismiss, Dkt. 49, filed 03/15/2023, and reinstating all of Plaintiff's pending motions.

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Ridiculous, absurd, ludicrous, and nonsensical— these are all words that can be used to describe a frivolous lawsuit. This Court agreed with the

Magistrate Judge of South Carolina in *Golden v. Google, LLC* to define "frivolousness" and dismiss Plaintiff's Case, "[t]his case was also dismissed with prejudice as frivolous, with the Magistrate Judge specifically noting that Plaintiff could not "circumvent prior rulings by this court that ***infringement allegations*** against Apple/Qualcomm are frivolous." *Golden v. Google, LLC*, 2021 WL 5890440 at *4 (D.S.C. Apr. 9, 2021).

It is my understanding that according to 35 U.S. Code § 271(a)(b)(c), the infringement allegations Plaintiff alleged in this case has an arguable basis either in law or in fact.

> (a) Except as otherwise provided in this title, ***whoever*** without authority makes, uses, offers to sell, or sells any patented invention … infringes the patent.
> (b) ***Whoever*** actively induces infringement of a patent shall be liable as an infringer.
> (c) ***Whoever*** offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

My questions to the Court are: Did the Court dismiss Plaintiff's case because the infringement allegations lack any arguable basis in law or in fact [see 35 U.S. Code § 271(a)(b)(c) above]; or, did the Court dismiss Plaintiff's claims because they are too fantastical, too unbelievable, ridiculous, absurd, ludicrous, and nonsensical? Maybe this Court dismissed Plaintiff's case for the same reasons the Magistrate Judge in the State of South Carolina, the one who started the "frivolous" dismissals; dismissed Plaintiff's case because Plaintiff is only one-third human and does not have the ability to invent; Plaintiff is property and therefore cannot own property; Plaintiff cannot bring an action in Court against Whites concerning property;

Plaintiff needs to know his place and then stay in his place; someone who looks like Plaintiff does not deserve a fair trial or trial by his peers.

According to 35 U.S. Code § 271(d), Plaintiff is well within his rights to bring an action against Qualcomm for infringement allegations with patents issued with the presumption of validity, and chats to show an element-by-element infringement.

> 35 U.S. Code § 271(d) "No patent owner otherwise entitled to relief for infringement; or, contributory infringement of a patent shall be denied relief or deemed guilty of misuse [] of the patent right by reason of his having done one or more of the following: (3) sought to enforce his patent rights against infringement or contributory infringement ..."

Proving patent infringement in court requires Plaintiff to prove two broad elements: ownership and validity of the patent(s), and infringement of the patent by the defendant(s). In this current case Plaintiff's patents-in-suit were issued with the presumption of validity, and just the patents *validity* alone provides an arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989) that this case not be dismissed for frivolousness.

> 35 U.S. Code § 282(a) In General. "A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

Qualcomm is broadcasting and falsely advertising to the World, they are the one responsible for the creation of the modern-day smartphone and the CPU designed specifically for the smartphone:

- "Enabling the rise of the smartphone: Chronicling the developmental history at Qualcomm: An engineer looks back at Qualcomm's essential role in groundbreaking

innovations, key technology developments, and bold integration decisions in creating today's smartphone. DEC 8, 2020 Snapdragon and Qualcomm branded products are products of Qualcomm Technologies, Inc. and/or its subsidiaries." https://www.qualcomm.com/news/onq/2020/12/enabling-rise-smartphone-chronicling-developmental-history-qualcomm

- "Qualcomm is the San Diego region's largest publicly traded company and the county's largest telecommunications employer. A world leader in wireless technologies, Qualcomm is also a driver of local and global innovation. Qualcomm invented technologies at the heart of 3G and 4G wireless and the first smartphone, and Qualcomm continues to pioneer new technologies that range from 5G to artificial intelligence, the industrial internet of things (IoT) to artificial, and augmented reality." https://www.sandiegobusiness.org/sites/default/files/EDC-QUALCOMM-STUDY-FINAL%20-WEB2.pdf

- "Qualcomm has grown to manufacture and market semiconductor components throughout the years. It also created semiconductor components and software for automobiles, watches, laptop computers, wireless networks, smartphones, and other devices" https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators

- "Qualcomm has been one of the main suppliers of smartphone chipsets. These chipsets range from midrange to flagship chipsets with the best specs known at the time of their launch. While most Android phones use Qualcomm Snapdragon chipset, Qualcomm manufactures smartphones" https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators

- "Qualcomm has been a technology innovator for many years, monetizing R&D on two fronts: marketing smartphones and other smart devices for sensors, and paying patent licensing" ... https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators/

- "In December 2007, the Snapdragon QSD8250 was released. It included the first 1 GHz mobile phone CPU. Qualcomm's "Krait" microarchitecture was introduced in the second generation of Snapdragon SoCs in 2011, allowing each CPU core to alter its speed dependent on the needs of the device." https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators/

4

- "Qualcomm Snapdragon is a line of system-on-a-chip (SoC) semiconductor components manufactured and marketed by Qualcomm Technologies Inc. for mobile smartphones. The ARM architecture is used by Snapdragon's central processing unit (CPU). A single SoC may include multiple CPU cores, an Adreno GPU, a Snapdragon wireless modem, a Hexagon digital signal processor (DSP), a Qualcomm Spectra image signal processor (ISP), and other software and hardware to support a smartphone's GPS, camera, video, audio, gesture recognition, and AI acceleration."
  https://www.internetsearchinc.com/qualcomm-wireless-technology-innovators/

My question to the Court is: Why not order Qualcomm to produce to the Court, before dismissing Plaintiff's case, at least one of its 130,000 patents that antedates Plaintiff's patents for at least the smartphone and/or the CPU made for the smartphone? Qualcomm has had multiple opportunities over multiple years to present the patents, but fail to do so. As indicated above, Qualcomm is advertising they are the creator of the smartphone. Qualcomm is openly disclosing to the World they are charging 4% / 5% on the selling price of Plaintiff's claimed invention.

> "Qualcomm 5G NR Royalty Terms Statement: "Qualcomm will continue to offer licenses for OEM branded mobile handsets that include both Qualcomm's cellular standard essential patents as well as those patents not essential to the standard, a total portfolio of over 130,000 patents and pending applications worldwide at royalty rates of 4% of the selling price for branded single-mode handsets [smartphones] and 5% of the selling price for branded multi-mode handsets [smartphones]." https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/qualcomm-5g-nr-royalty-terms-statement.pdf

Possible grounds for Qualcomm to challenge the validity of a Plaintiff's patent may include:

1. The patented invention is not novel because of prior art;
2. The patented invention consists of obvious subject matter, based on prior art;

3. The patent claims are so unclear or ambiguous that they "fail to inform, with reasonable certainty," people with knowledge of the subject matter involved (*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)); or

4. The patent holder omitted information or provided inaccurate information when applying to the USPTO.

This Court stated, "Plaintiff also fails to adequately plead contributory or induced infringement" … "As for contributory infringement, Plaintiff fails to plead any of the elements of that [contributory] offense:"

(1) selling a device capable of infringing the patent, which is not suitable for substantial non-infringing use. The Court is quoted as saying, "[f]or example, Plaintiff fails to plead facts plausibly supporting a claim that the Snapdragon chipsets or Snapdragon ride platform do not have other noninfringing uses. See *Uniloc U.S.A., Inc. v. Logitech, Inc.*, No. 18-cv-01304, 2018 WL 6025597 (N.D. Cal. Nov. 17, 2018) (granting motion to dismiss where plaintiff "fail[ed] to provide factual underpinnings for its allegations that there are no substantial noninfringing uses of the accused devices")."

- The Snapdragon chipsets are not suitable for substantial non-infringing use because Plaintiff's patented CPUs are "tied" to Qualcomm's Snapdragon chipsets. The CPU or processor is one of the first components that we identify in a phone. The CPU of a phone, just like that of a computer, is responsible for processing general data on a day-to-day basis. If we want to open a program, the CPU is the one that requests the information from the storage and transfers it to the RAM memory. Something curious is that the CPU does not have a single specialized role, but its operation is present in practically all the tasks of the phone. In modern smartphones, most CPUs tend to

have 8 cores. An 8 core CPU can run 8 hardware threads simultaneously, or 16 if it has 2-way hyperthreading. The CPU is considered the "brains" of the smartphone. Hypothetically, Qualcomm's modems would receive operational and functional instructions from Plaintiff's patented CPUs.

(2) with knowledge that the infringing device was especially adapted for use in an infringement of such patent.

- Plaintiff reference Qualcomm's knowledge at ¶¶ 44-51, 55, 60, 69-70, & 90 of the Complaint.

- "On November 4, 2010, Plaintiff emailed Kate Lane, Strategic IP, Qualcomm Incorporated (E-mail: clane@qualcomm.com); Direct: (858-658-2047)), to inform Ms. Lane of certain patented technology (i.e., CMDC—Smartphone—device; central processing unit (CPU); and, a Stall, Stop, and Vehicle Slowdown System for manned and unmanned electric, autonomous, and driverless vehicles).

- Plaintiff asked if Qualcomm would be interested in entering into a licensing agreement with the Patent Owner (Plaintiff). Subject: "Patented Technology for Qualcomm's Review (copy available upon request).

- Plaintiff mailed out letters dated December 7, 2010 addressed to the attention of Qualcomm's Chairman & CEO Dr. Paul E. Jacobs and Qualcomm's EVP & President Derek Aberle, (copies of the letters and return receipts are available upon request) informing the Executives of the Patent Owner's (Plaintiff) patented technology and asked if they would be interested in entering into a licensing agreement with the Patent Owner (Plaintiff).

- After 10 months, Ms. Lane responded back via e-mail on September 29, 2011 with, "Hi Larry, I'm just checking in to see if this portfolio is still available for purchase. Please let me know. Thank you, Kate".

- On October 5, 2011, Ms. Lane responded via e-mail, "Thanks Larry, [c]an you please take a few moments to fill out the attached Patent Information Request form for this? Please let me know if you have any questions. Best regards, Kate" (copy available upon request).

- On October 11, 2011, the Patent Owner (Plaintiff) returned via e-mail, the answered Patent Information Request form to Ms. Lane. The Patent Owner (Plaintiff) made several attempts to contact Ms. Lane via e-mail and by phone after that, but never heard back from Ms. Lane.

(3) actual infringement by another.

- Element 3 is why Plaintiff submitted the Claim Chart on Samsung—to show actual infringement by another. The Samsung Claim Chart compares nine (9) of Samsung's allegedly infringing products as infringing at least independent claim 1 of Plaintiff's '497 patent; claim 10 of Plaintiff's '752 patent; claims 1-9 of Plaintiff's '189 patent; claims 13-23 of Plaintiff's '439 patent; and, claims 4-6 of Plaintiff's '287 patent. Twenty-five (25) independent patent claims asserted that covers Plaintiff's patented smartphone and CPU. Plaintiff also alleged infringement of independent claims 1 & 11, and dependent claims 2-10 & 12-20 Plaintiff's '619 patent. Samsung was selected because Plaintiff believes Samsung actually infringes Plaintiff's patents, and Samsung is Qualcomm's No. 1 customer.

Plaintiff diligently pled all the elements to support a claim of contributory infringement in Plaintiff's complaint. Which makes Plaintiff question the Court's motive. Plaintiff can accept it if the Court erred in missing one of the elements described in Plaintiff's complaint, but to miss all three. Please explain, how is that even possible?

**The Court writes**: "The Complaint alleges that "[u]pon information and belief, Plaintiff believes Qualcomm has formed or created its monopoly for chipsets by 'tying' Plaintiff's CPUs to its wireless cellular modems." Compl. ¶ 52. The theory appears to be that "Qualcomm's 'hold out' strategy of 'no license, no chip' was used to force the co-conspirator OEMs to purchase Plaintiff's patented CPU that Qualcomm 'tied' to its modem." Id. ¶ 54. The alleged harm appears to be that "Qualcomm's anticompetitive practices has [sic] restrained Plaintiff from entering the market to collect royalties on his patented inventions." Id. ¶ 83. Plaintiff relies heavily throughout the complaint on the district court's findings in *FTC. v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), and attaches a copy of that decision to the complaint, without recognizing that the case was reversed and vacated by the Ninth Circuit. See id. ¶¶ 76-78; cf. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1001- 1002 (9th Cir. 2020)"

**Plaintiff stated**: at ¶ 54 of Plaintiff's complaint, "'Tying' under U.S. law is defined as "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product."

**Qualcomm admits**: "Qualcomm itself has admitted that plaintiffs' claims differed from those at issue in the FTC's case including an explicit allegation regarding "tying". *See* Qualcomm Opening Br., *FTC v. Qualcomm Inc.*, Case No. 19-16122, ECF No. 80, at 41 (9th Cir.) (acknowledging that the FTC "never made" a "tying" claim). In remanding this case to the district court to decide the effect of *FTC v. Qualcomm* in the first instance, the panel agreed with

9

Plaintiffs that the merits of Plaintiffs' case were not at issue in the limited 23(f) appeal." U.S. District Court—NDC—San Francisco Division; In Re: Qualcomm Antitrust Litigation [Joint Case Management Statement] Case 3:17-md-02773-JSC Dkt. 881 Filed 04/14/22 Page 6 of 19.

The Ninth Circuit never weigh in, or give an opinion on whether or not it is okay, or even legal for someone to collect royalties on another's patented inventions without authorization or license to do so. Likewise, this Court has not weigh in on whether or not it is okay, or even legal for someone to collect royalties on another's patented inventions without authorization or license to do so.

It's very important we receive an answer to this question because it could reshape the entire patent industry or destroy it all together. If the answer is "yes", it takes away the need for anyone, anywhere to ever apply for and obtain a patent. Which also means the 130,000 patents Qualcomm currently hold will become worthless. If the answer is "no" it means Qualcomm needs to cease and desist collecting royalties on Plaintiff's patented CMDC devices i.e., handsets, cell phones, smartphones.

According to 35 U.S. Code § 271(a) … ***whoever*** without authority makes, uses, offers to sell, or sells any patented invention … infringes the patent; and according 35 U.S. Code § 271(c) … ***Whoever*** offers to sell or sells within the United States [] a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, … shall be liable as a contributory infringer.

> "If someone *uses* your invention without your permission, you are entitled to stop their *use* of the invention by seeking a legal injunction in Federal court. In addition, you are entitled to collect damages for any unlicensed *use* of your invention. Damages are generally calculated based on lost profits that you suffered as a result of the infringement,

or if you are not actually producing the product, to the unjust enrichment the infringer received through the unauthorized *use* of your patent. If the infringer *used* your technology knowingly and willfully, you may be entitled to receive up to three times the actual damages suffered" *Carr & Ferrell LLP, one of Silicon Valley's foremost technology law firms, and specializes in patent and intellectual property law matters,* https://www.carrferrell.com/what-if-someone-uses-my-patented-invention-without-my-permission

**Antitrust Injury**

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is collecting a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone) that Plaintiff alleges is his patented communicating, monitoring, detecting, and controlling (CMDC) device (i.e., new and improved cell phone; smartphone). Plaintiff alleged "Qualcomm engaged in 'anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power'." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Plaintiff alleges he has suffered an antitrust injury because Plaintiff owns the patent(s), and patent rights to collect a royalty on the price of each handset sold (i.e., new and improved cell phone; smartphone).

In the opinion of the U. S. District Court for the District of Northern California; "Qualcomm leveraged its monopoly position in chips to secure unreasonably high rates for its SEPs. Qualcomm, for example, refused to provide must-have chips unless customers took the unreasonable IP licenses—the "no license, no chip" model.

Judge Koh, *in FTC v. Qualcomm Inc.*, reasoned that, "set against the backdrop of this illegal refusal to deal, the cost-raising "no license, no chip" policy hindered rivals, leading to anticompetitive harm in modem chips. Here, Judge Koh, quoting the D.C. Circuit's decision

in *United States v. Microsoft Corp.*, held it sufficient that Qualcomm engaged in "anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Qualcomm's "no license, no chip" policy is designed to force sell CPUs Plaintiff believe infringes his patented CPUs, that's tied to Qualcomm's cellular modem. Qualcomm's "no license, no chip" policy is only made possible by Qualcomm's unauthorized use of allegedly infringing CPUs of Plaintiff's patented CMDC devices (i.e., smartphones; handsets of OEM's).

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of each phone sold, i.e., handset; smartphone, etc. The elements of unjust enrichment exist because: 1) Plaintiff provided something of value to the defendant Qualcomm; 2) Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and, 3) it would be inequitable for Qualcomm to enjoy the benefit Plaintiff provided without compensating Plaintiff.

The United States District Court Northern District of California; *Federal Trade Commission v. Qualcomm Incorporated*, "FINDINGS OF FACT AND CONCLUSIONS OF LAW" Case 5:17-cv-00220-LHK; Document 1490 Filed 05/21/19; Presiding United States District Judge Lucy H. Koh has concluded Qualcomm is being unjustly enriched from its anticompetitive practices: "Qualcomm stopped licensing rival modem chip suppliers and instead started licensing only OEMs at a ***5% running royalty on the price of each handset sold***. These licenses are called Subscriber Unit License Agreements ("SULA") …"

"Specifically, Qualcomm charges a 5% running royalty on handset sales for a license to Qualcomm's CDMA patent portfolio. Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition. The Federal Trade Commission Act bans "unfair

methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said all violations of the Sherman Act also violate the FTC Act.

Judge Lucy Koh issued her decision in *FTC v Qualcomm*. The facts that were key in the Judge's analysis included the following:

- Qualcomm employed a business model where it sold chips to handset makers under a supply agreement, while simultaneously licensing its SEPs to them under what it called a 'subscriber unit license agreement' (SULA). Under the SULA, the handset makers pay royalties of 5% on the price of each phone sold…

Qualcomm's anticompetitive practices has destroyed all possibilities for the Plaintiff to receive royalty compensation for Plaintiff's patented CMDC (handset) devices and Plaintiff's patented CPUs. The OEMs are already paying royalties to Qualcomm on every handset sold; and, the OEMs are already paying an increased royalty rate for Qualcomm's chipsets that include Plaintiff's patented CPUs. This injury is of the type the antitrust laws were intended to prevent; which makes the defendant's conduct unlawful.

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of the phone, i.e., Plaintiff's CMDC device; handset; smartphone, etc. Plaintiff has the right to exclude Qualcomm from "using" Plaintiff's CMDC devices—handsets to unjustly enrich itself.

Plaintiff is entitled to stop Qualcomm's use of the Plaintiff's inventions to generate revenue (5% royalty on each handset sold) by seeking a legal injunction in Federal Court.

Qualcomm's anticompetitive practices has restrained Plaintiff from entering the market to collect royalties on his patented inventions. Plaintiff is entitled to collect damages from Qualcomm for any unlicensed use of his inventions. Damages are generally calculated based on lost profits Plaintiff suffered as a result of the antitrust injury.

If nothing else happens as a result of Plaintiff's motion for reconsideration, please answer the following: Is it legal for Qualcomm to tie Plaintiff's patented CPUs to its chipsets without authorization or license to do so? Is it legal for Qualcomm to collect a royalty off of Plaintiff's patented CMDC devices i.e., handsets, cell phones, smartphones without authorization or license to do so? Is it legal for Qualcomm to collect a royalty off of Plaintiff's patented Central Processing Units (CPUs) without authorization or license to do so?

Ever since the late 1940s, when the Supreme Court stated in *International Salt Co. v. United States* that "it is unreasonable, per se, to foreclose competitors from any substantial market," and in *Standard Oil Co. v. United States* that "[t]ying agreements serve hardly any purpose beyond the suppression of competition," U.S. courts have found tying to be *per se* unlawful.

Sincerely,

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

USPS Priority Mail Express shipping label.

FROM:
Larry Golden
740 Woodruff Rd.
#1102
Greenville, SC 29607
Phone: 864-288-5605

TO:
U.S. District Court - NDC - Oakland
Case No: 4:22-CV-03283
1301 Clay Street
Oakland, CA
ZIP: 94612
Phone: (510) 637-3530

Postage: $28.75
Date Accepted: 03/17/23
Time Accepted: 2:41 PM
Scheduled Delivery: 03/18/23, 6:00 PM
PO ZIP: 29606
Tracking: EI 436 403 824 US

$100.00 insurance included.