# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net



FILED

MAR 29 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

---

LARRY GOLDEN

*Pro Se* Plaintiff,

V.

QUALCOMM INC.

Defendant.

---

CASE NO: 4:22-cv-03283-HSG

**(JURY TRIAL DEMANDED)**

**(Sherman Act) (Motive to Form a Conspiracy) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**

March 27, 2023

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff is asking this Court to reconsider its Order Granting Defendant's Motion to Dismiss, Dkt. 49, filed 03/15/2023, and reinstating all of Plaintiff's pending motions.

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Ridiculous, absurd, ludicrous, and nonsensical—these are all words that can be used to describe a frivolous lawsuit.

A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 117 (1994). The review of such a motion is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)).

Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (citing *Scheuer*, supra, 416 U.S. at 236).

All Plaintiff's cases concern motions to dismiss. Such motions do not resolve whether Plaintiff will ultimately prevail, but simply whether the complaint was sufficient to cross the Court's pleading threshold. In *Intel Corp. v. Future Link Sys., LLC*, the District of Delaware considered a policy of non-review of patents in the context of a motion for summary judgment … the Court denied Intel's motion. In so doing, however, the Court noted that "[i]t may be difficult to see how a reasonable factfinder would view" Intel's conduct—including an alleged "corporate atmosphere encouraging employees to 'turn a blind eye' to patents"—to be "egregious . . . wanton, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Intel Corp. v. Future Link Sys., LLC*, 268 F.Supp.3d 605, 608–09 (2017). Qualcomm has "turn[ed] a blind eye to [plaintiff's] patents".

Every time, and in every court, the Judge improperly dismisses Plaintiff's patents as "frivolous", the Judge improperly expands the scope of the Defendants' patents—used to restrain trade beyond enforcing the exclusive rights that a lawfully obtained patent provides and expands the scope of the patent beyond its boundaries. Plaintiff refers to the dismissals as a dismissal to his patents, instead of cases, because the patents are at the core of all Plaintiff's pleadings.

Proving patent infringement in court requires Plaintiff to prove two broad elements: ownership and validity of the patent(s), and infringement of the patent by the defendant(s). Proving anti-competitive practices, "tying", and unjust enrichment in court requires Plaintiff to prove two broad elements: ownership and validity of the patented inventions, and the "use" or "misuse" of the patented inventions by the defendant(s).

The Trial Court erred in dismissing this current case for "frivolousness" because valid patents have a place in law and in fact. 35 U.S. Code § 282(a) states In General. "A patent shall be presumed valid. Each claim of a patent (… independent, dependent, or multiple dependent …) shall be presumed valid independently of the validity of other claims". In the District Courts, invalidity must be proven on the heightened standard of "clear and convincing evidence".

Each time a Judge prematurely dismisses Plaintiff's patents; without reviewing the Defendant's invalidity contentions; and without a Marksman Hearing/claim construction, the Judge involves himself/herself in a conspiracy against rights: 18 U.S.C. § 241: "Section 241 makes it unlawful for two or more persons to agree to injure, threaten, or intimidate a person in the United States in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the Unites States or because of his or her having exercised such a right." Unlike most conspiracy statutes, §241 does not require, as an element, the commission of an overt act. *Department of Justice* https://www.justice.gov/crt/statutes-enforced-criminal-section#:

3

The Northern District of California Judges has improperly dismissed Plaintiff's [patents] cases against Apple, Intel, and Qualcomm as "frivolous", while overlooking and allowing for the Defendants' "misuse" of their patents. Apple's "misuse" involves the use of its first *design* patent (2007) as the first *utility* patent for the smartphone. Intel continues to claim the right to exclude others and collects royalties on old, outdated, and expired patents. Qualcomm forces its customers to pay royalties on unpatented products, or products that are patented by the Plaintiff.

The one time the Federal Circuit in *Larry Golden V. Google LLC*; CAFC Case No. 22-1267 issued a decision that Plaintiff's complaint and claim charts are not "facially frivolous" because "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189" … "Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart" [vacated and remanded]; the Northern District of California Judges in Apple, Intel, and Qualcomm blatantly disrespected the opinion of the Federal Circuit that Plaintiff's [patents] are not "facially frivolous", and reverted back to improperly dismissing Plaintiff's patents as "frivolous"; meaning the patents "lacks any arguable basis either in law or in fact" *Neitze v. Williams*, 490 U.S. 319, 325 (1989).

Question: Are the Judges willfully depriving Plaintiff of his rights and privileges that are protected by the Constitution and laws of the United States? [1]

---

[1] TITLE 18, U.S.C., SECTION 242 Section 242 of Title 18 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. Persons acting under color of law within the meaning of this statute include police officers, prisons guards and other law enforcement officials, **as well as judges**… *Department of Justice*

The Trial Court erred in dismissing Plaintiff's *Golden v. Intel Corporation* Case No. 5:22-cv-03828-NC as having already been decided in *Golden v. US* Case No. 13-307C. *Golden v. US* was a case against the United States Government—for infringement allegations against the DHS.

## Patent Misuse Reform Act of 1988

In 1988, Congress enacted legislation that narrowed the scope of the patent misuse by creating safe harbors for patent holders in 35 U.S.C. § 271(d). It clarified that patentees did not misuse their patents by suing people creating products which could be used to infringement patents (contributory infringement). Requiring people to buy another license or product to obtain a patented product is also not misuse, unless the patentee holds "market power."

Qualcomm has two primary business units. Its chip (or chipset) division designs cellular modems that allow phones to communicate with cellular networks and markets those modem chips to independent device producers (also referred to as original equipment manufacturers or OEMs). Its licensing division negotiates with the same OEM customers to secure royalty-bearing patent license agreements. "*Tying and Exclusion in FRAND Licensing: Evaluating Qualcomm*"; the antitrust source www.antitrustsource.com February 2022.

Qualcomm has market power in both lines of business. In particular, its chip division accounts for a very high share of modem sales for certain wireless technologies (CDMA and high-end LTE). At the same time, its licenses grant rights to standard essential patents (SEPs), which OEMs and rival chipmakers must infringe in order to practice the protocols that allow independently designed networks and devices to communicate. https://www.americanbar.org/

In a tying arrangement, the sale of one product is conditioned on the buyer's [OEMs—Google; Samsung, etc.] agreement to take a second good as well. In such cases, the antitrust

plaintiff (Golden) usually identifies one product as the "tying good" (Qualcomm's Snapdragon chipset) and the other as the "tied good" (Golden's patented CPUs).

In a typical case, the defendant (Qualcomm) already possesses a monopoly in the market for the tying product (Qualcomm's Series of Snapdragon chipset that includes its modems), whereas many consumers would have bought the tied good (Golden's patented CPU) from another provider but for the tie. The alleged exclusion therefore occurs in the tied market.

As described above, Qualcomm's tying strategy involved discounts and incentives for handset producers that agreed to purchase chipsets primarily or exclusively from Qualcomm. While the most notable example was a set of contracts with Apple that provided large royalty rebates conditioned on exclusivity. Judge Koh's decision also noted that similar terms were offered to Blackberry, LG Electronics, Samsung, and Motorola. *Qualcomm*, 2019 WL 2206013 at *153–54. https://www.americanbar.org/content/dam/aba/publishing/antitrust-magazine-online/2020/feb-2020/feb20_hovenkamp_2_13f.pdf

**Qualcomm admits**: "Qualcomm itself has admitted that Plaintiffs' claims differed from those at issue in the FTC's case including an explicit allegation regarding "tying". *See* Qualcomm Opening Br., *FTC v. Qualcomm Inc.*, Case No. 19-16122, ECF No. 80, at 41 (9th Cir.) (*acknowledging that the FTC "never made" a "tying" claim*). "In remanding the case to the district court to decide the effect of *FTC v. Qualcomm* in the first instance, the panel agreed with Plaintiffs that the merits of Plaintiffs' case were not at issue in the … [] appeal." U.S. District Court—NDC—San Francisco Division; In Re: Qualcomm Antitrust Litigation [Joint Case Management Statement] Case 3:17-md-02773-JSC Dkt. 881 Filed 04/14/22 Page 6 of 19.

The following charts illustrates how Qualcomm uses "tying" to maintain its monopoly and the significance of Plaintiff's CPUs in the tying arrangement to Qualcomm's revenue.

**The Impact of "Tying" Plaintiff's Central Processing Units (CPUs)**

Qualcomm's Baseband Processor (modem) is a mobile Semiconductor Device or chip in a smartphone, smartwatch, tablet, or other mobile device that convert digital data into radio frequency signals and manages all the radio functions.



A baseband processor allows devices to connect to wireless cellular networks. It is used in conjunction with a *Central Processing Unit or (CPU)*. Inside every cellular device is a component known as a cellular modem, which handles the actual communications with the cellular network.



Qualcomm Snapdragon Gen 8 Deep Dive CPU Display

7

"Intelligent system-level integration of the digital baseband (modem), RF transceiver, and all key RF front-end components." "The CPU *processors* utilize a strong heritage in engineering to deliver best-in-class security, AI, and connectivity solutions" *Qualcomm* https:// www.qualcomm.com/products/technology/processors#:



Snapdragon 888 Modem-RF System

The Ninth Circuit never weighed in, or issued an opinion on whether or not it is okay, or even legal for Qualcomm, or anyone, to collect royalties on another's patented inventions (i.e.,

CMDC devices; CPUs) without authorization or license to do so. Likewise, this Court has not weighed in on whether or not it is okay, or even legal for Qualcomm, or anyone to collect royalties on Plaintiff's patented inventions (i.e., CMDC devices; CPUs) without authorization or license to do so.

Below, is a summary chart that illustrates three (3) original engineering manufacturers (OEMs)—Google; Samsung, Asus/Qualcomm—allegedly infringing smartphones, that illustrates the chipsets Qualcomm "contributes" to the infringing smartphones; and the allegedly infringing CPUs "tied" to Qualcomm's modems, that are forced on the OEMs thru "no license, no chip"

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Asus / Qualcomm Smartphone for Snapdragon Insiders |
|---|---|---|
|  |  |  |
| **Chipset**: Qualcomm Snapdragon 765G | **Chipset**: Qualcomm SM8350 Snapdragon 888 5G (5 nm) | **Chipset**: Qualcomm SM8350 Snapdragon 888 5G (5 nm) |
| **Modem**: Snapdragon® X52 5G Modem-RF System. | **Modem**: Snapdragon® X60 5G Modem-RF System. | **Modem**: Snapdragon® X60 5G Modem-RF System. |
| **CPU**: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) | **CPU**: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) | **CPU**: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) |
| **OS**: Android 11, upgradable to Android 13 | **OS**: Android 11, upgradable to Android 13 | **OS**: Android 11 |

**Antitrust Injury**

"Qualcomm's first weapon against competitors: patent licensing terms requiring customers (i.e., OEMs) to ***pay a royalty on every phone sold***… This gave Qualcomm an inherent advantage in competition with chipmakers… Qualcomm could afford to cut the price of its own chips, knowing that the customer would still be paying Qualcomm a hefty patent licensing fee on every phone." *Qualcomm's chip deals boxed out competitors*, https://arstechnica.com/tech-policy/2019/05/how-qualcomm-shook-down-the-cell-phone-industry-for-almost-20-years/

Qualcomm fail to defend against Plaintiff's claim that Qualcomm is collecting a 5% running royalty on the price of each handset (i.e., new and improved cell phone; smartphone) that Plaintiff alleges is his patented communicating, monitoring, detecting, and controlling (CMDC) device (i.e., cell phone; smartphone).

Plaintiff alleges he has suffered an antitrust injury because Plaintiff owns the patent(s), and patent rights to collect a royalty on the price of each handset (i.e., new and improved cell phone; smartphone) Qualcomm collects on, and each allegedly infringing CPU Qualcomm sells.

In the opinion of the U. S. District Court for the District of Northern California; "Qualcomm leveraged its monopoly position in chips to secure unreasonably high rates for its SEPs. Qualcomm, for example, refused to provide must-have chips unless customers took the unreasonable IP licenses—the "no license, no chip" model [that includes the "tied" CPU].

Judge Koh, *in FTC v. Qualcomm Inc.*, reasoned that, "set against the backdrop of this illegal refusal to deal, the cost-raising "no license, no chip" policy hindered rivals, leading to anticompetitive harm in modem chips [and CPUs]. Here, Judge Koh, quoting the D.C. Circuit's decision in *United States v. Microsoft Corp.*, held it sufficient that Qualcomm engaged in

"anticompetitive conduct that reasonably appear[s] capable of making significant contribution to . . . maintaining monopoly power." *Qualcomm*, No. 17-CV-00220-LHK, slip op. at 42-43."

Qualcomm's "no license, no chip" policy is designed to force sell CPUs Plaintiff believe infringes his patented CPUs, that's tied to Qualcomm's cellular modem. Qualcomm's "no license, no chip" policy is only made possible by Qualcomm's unauthorized use of allegedly infringing CPUs of Plaintiff's patented CMDC devices (i.e., smartphones; handsets of OEM's).

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of each phone sold, i.e., handset; smartphone, etc. The elements of unjust enrichment exist because: 1) Plaintiff provided something of value to the defendant Qualcomm; 2) Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and, 3) it would be inequitable for Qualcomm to enjoy the benefit Plaintiff provided without compensating Plaintiff.

The United States District Court Northern District of California; *Federal Trade Commission v. Qualcomm Incorporated*, "FINDINGS OF FACT AND CONCLUSIONS OF LAW" Case 5:17-cv-00220-LHK; Document 1490 Filed 05/21/19; Presiding United States District Judge Lucy H. Koh has concluded Qualcomm is being unjustly enriched from its anticompetitive practices: "Qualcomm stopped licensing rival modem chip suppliers and instead started licensing only OEMs at a *5% running royalty on the price of each handset sold*. These licenses are called Subscriber Unit License Agreements ("SULA") …"

"Specifically, Qualcomm charges a 5% running royalty on handset sales for a license to Qualcomm's CDMA patent portfolio. Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition. The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said all violations of the Sherman Act also violate the FTC Act.

Judge Lucy Koh issued her decision in *FTC v Qualcomm*. The facts that were key in the Judge's analysis included the following:

- Qualcomm employed a business model where it sold chips to handset makers under a supply agreement, while simultaneously licensing its SEPs to them under what it called a 'subscriber unit license agreement' (SULA). Under the SULA, the handset makers pay royalties of 5% on the price of each phone sold…

Qualcomm's anticompetitive practices has destroyed all possibilities for the Plaintiff to receive royalty compensation for Plaintiff's patented CMDC (handset) devices and Plaintiff's patented CPUs. The OEMs are already paying royalties to Qualcomm on every handset sold; and, the OEMs are already paying an increased royalty rate for Qualcomm's chipsets that include Plaintiff's patented CPUs. This injury is of the type the antitrust laws were intended to prevent; which makes the defendant's conduct unlawful.

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of the phone, i.e., Plaintiff's CMDC device; handset; smartphone, etc. Plaintiff has the right to exclude Qualcomm from "using" Plaintiff's CMDC devices—handsets to unjustly enrich itself. Plaintiff is entitled to stop Qualcomm's use of the Plaintiff's inventions to generate revenue (5% royalty on each handset sold) by seeking a legal injunction in Federal Court. Qualcomm's anticompetitive practices restrained Plaintiff from entering the market to collect royalties. Plaintiff is entitled to collect damages from Qualcomm that are calculated based on lost profits Plaintiff suffered as a result of the antitrust injury.

The above-described injuries to the Plaintiff are of a type that the antitrust laws were intended to prevent; and Plaintiff's injuries flows from that which makes the Defendant's acts unlawful.

**The Anti-Competitive Impact on Qualcomm's Competitors; Plaintiff's Antitrust Injury; Intellectual Property Theft; and the Break-Down of the Entire Patent System**

If Qualcomm is allowed to collect royalties on anyone's patented inventions without authorization or legal right to do so; allowed to "tie" anyone's patented inventions to their own while forcing competitors to compete against the illegal "tie"; contributing to the infringement of its customers by contributing the Snapdragon Series of Chipsets that includes the "tying" product Qualcomm's wireless cellular modems and the "tied" product Plaintiff's patented CPUs; inducing the infringement of its customers with its "no license, no chip" policy of purchasing the "tied" and "tying" products when both can be sold separately, Qualcomm will eventually destroy the entire patent grant system.

Qualcomm was given notice by the Plaintiff and by the DOJ that its smartphones may infringe upon Plaintiff's patented CMDC devices; after being given notice of Plaintiff's intellectual property subject matter in a "cease and desist" letter (2010), plus a notice to appear by the CFC / DOJ (2019) it is alleged that Qualcomm willfully violated certain Antitrust laws i.e., tying arrangements, maintaining a monopoly, etc. Qualcomm, having knowledge of Plaintiff's inventions, willfully violated certain antitrust laws—elements of Clayton Act 4]; and, after being given notice of Plaintiff's intellectual property subject matter in a "cease and desist" letter (2010), plus a notice to appear by the CFC / DOJ (2019) Qualcomm's willfully infringed Plaintiff's patents; constitutes a complete breakdown of the Patent grant system.

Unjust enrichment stems from the theory that no one [Qualcomm] should be allowed to profit at another's [Plaintiff] expense in circumstances which suggest mistake, fraud, illegality or bad faith. Unjust enrichment claims may exist with or without a contract between the parties. The elements of Qualcomm's unjust enrichment exist because:

13

1. Plaintiff provided something of value to Qualcomm;

2. Qualcomm acknowledged, accepted and benefitted from what Plaintiff provided; and,

3. It would be inequitable for the Qualcomm to enjoy the benefit(s) Plaintiff provided without compensating Plaintiff.

In this case, and in Plaintiff's related cases, the cases were dismissed because the Courts agreed with Defendants' that "the same patent claims have been presented and denied as "frivolous". Plaintiff believes Qualcomm, and others named in the related cases, business practices and behavior is no less than the characteristics of "pirating".

Qualcomm's violations are far worse than having a policy of not reviewing the patents of others. Qualcomm has deliberately ignored Plaintiff's patents, and as long as the Courts are complicit with Qualcomm's practices, and not demand Qualcomm to appear to defend the allegations brought against them, Qualcomm will continue to "pirate" its competitors or potential competitors, and Plaintiff until it destroys the entire patent grant system.

**Intellectual Property Thief**

Qualcomm's intellectual theft occurs when Qualcomm steals or uses without permission Plaintiff's intellectual property (IP). Qualcomm's theft of intellectual property happens when Qualcomm knowingly uses, misappropriates, takes, or steals Plaintiff's property that falls under the protection of laws around intellectual property. In order to qualify as theft, Plaintiff's intellectual property is used, and royalties collected, without the consent of Plaintiff.

IP theft is an extremely expensive problem that costs businesses in the United States billions of dollars annually [antitrust violation], so the FBI has gotten more involved recently by making the investigation and prevention of this issue more of a priority. Intellectual theft is

quick, easy, and cheap to commit. All that has to happen for Qualcomm to steal Plaintiff's intellectual property is to copy Plaintiff's work, idea, or product.

It's possible for intellectual property thieves, such as Qualcomm, to financially benefit from their theft by collecting royalties on the inventions without license or legal right to do so. This loss of profit can affect the owner [Plaintiff] of the intellectual property deeper than just a simple theft.

For any type of stolen intellectual property, the first step is generally to send a cease-and-desist letter. Plaintiff's cease-and-desist letter was the first contact with the intellectual property thief to just let them know they need to stop using and stealing Plaintiff's intellectual property.

The majority of intellectual property cases are tried as federal cases, making them federal crimes. The possible consequences of intellectual property theft are: * Criminal fines, * Imprisonment (the length of time depends on the nature of the charges), * Seizure of the stolen intellectual property, * Civil charges (could include business profits lost due to the theft), * Suspension or loss of an operating license held by a business. The laws around intellectual property protection come with stiff, costly penalties for violation.

If Qualcomm is allowed to collect royalties on Plaintiff's patented inventions without authorization or legal right to do so, then Plaintiff should likewise be allowed to collect royalties on Qualcomm's patented inventions without authorization or legal right to do so. For that matter, anyone who is currently paying Qualcomm royalties on inventions covered by Qualcomm patents should be allowed to stop, because Qualcomm has changed patent law to read; "it's okay to collect tens of billions of dollars in royalties on the inventions of someone else without being authorized to collect the royalties or having the legal right to do so".

Qualcomm should be enjoined to cease collecting royalties on CMDC devices (cell phones) Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for collecting royalties on CMDC devices (handsets) Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be enjoined to cease collecting royalties on CPUs Qualcomm has "tied" to its Snapdragon chipset that Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for collecting royalties on CPUs Qualcomm has "tied" to its Snapdragon chipset that Qualcomm does not have authorization or a legal right to collect royalties on. Qualcomm should be ordered to pay triple damages to Plaintiff for contributing to the infringement of Plaintiff CMDC devices with Plaintiff's patented CPUs Qualcomm has "tied" to its Snapdragon chipset [Qualcomm threatens and force OEMs to purchase the "tied" and "tying" products together; "no license, no chip".

Note: In *Golden v. Qualcomm*, Case 4:22-cv-03283-HSG Dkts 1-5, 1-6, & 1-7 Filed 06/06/22, are supportive claim charts for direct, contributory, induced, 'doctrine of equivalents' and willful infringement. Nine (9) alleged infringing products that infringes twenty-five (25) of Plaintiff's patent claims—claim 1 of '497 patent; claim 10 of '752 patent; claims 1-9 of '189 patent; claims 13-23 of '439 patent; and claims 4-6 of '287 patent. Claims 1-20 of '619 patent not included in charts but asserted in case.

Sincerely,

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(M) 8649927104
Email: atpg-tech@charter.net

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 27th day of March, 2023, a true and correct copy of the foregoing "Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Reconsideration", was served upon the following Defendant by priority "express" mail:

Joseph John Stevens

PATTERSON & SHERIDAN, LLP

50 West San Fernando Street, Suite 250

San Jose, CA 95113

Phone: (650) 384-4418

Fax: (650) 330-2314

Email: jstevens@pattersonsheridan.com


Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605